IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

JULIO MARTINEZ-GUZMAN,     :     MOTION TO VACATE
                                 :     28 U.S.C. § 2255
      Movant,               :
                                 :
     v.                     :     CIVIL ACTION NO.
                                 :     4:10-CV-059-RLV-WEJ
UNITED STATES OF AMERICA,     :
                               :
      Respondent.          :     CRIMINAL ACTION NO.
                               :     4:08-CR-03-RLV-WEJ

**<u>FINAL REPORT AND RECOMMENDATION</u>**

Now pending before the Court is a Motion to Vacate, Set Aside, or Correct

Sentence filed under 28 U.S.C. § 2255.  Movant, Julio Martinez-Guzman (also

sometimes called "defendant"), asserts that (1) his counsel was ineffective for

failing to file an appeal as he directed, and (2) his guilty plea (which included an

appeal waiver) was involuntary based on ineffective assistance of counsel.  (<u>See</u>

Mot. [48] at 3; Pet'r's Traverse [54].)[1]

By Order dated August 10, 2010 [55], the Honorable Robert L. Vining, Jr.,

Senior United States District Judge, referred said Motion to the undersigned for an

---

[1] All documents cited herein are docketed in the criminal case, 4:08-CR-03-RLV.

evidentiary hearing and submission of a report and recommendation. The undersigned held a hearing on September 8, 2010, which has been transcribed [59]. Based on the evidence in the record and the testimony received at that hearing, for the reasons detailed below, the undersigned **RECOMMENDS** that said Motion be **DENIED**.

## I.    BACKGROUND

On December 13, 2007, the undersigned issued a Criminal Complaint against Mr. Martinez-Guzman, charging him with attempting to possess with intent to distribute at least 500 grams of a substance and mixture containing a detectable amount of methamphetamine, a Schedule II controlled substance; and charging him with using and carrying a firearm during and in relation to a drug trafficking crime, all in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 924(c)(1)(A). (See Magistrate Compl. [1].)  The Grand Jury subsequently returned a two-Count Indictment [8] against defendant on January 10, 2008.[2]

---

[2] Count One alleged that on December 12, 2007, defendant did knowingly and intentionally attempt to possess with intent to distribute at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii).  Count Two charges that, on that same date, defendant did use and carry two firearms during and in relation to, and possessed two firearms in furtherance of, the drug trafficking crime alleged in Count One, all

Although the undersigned initially appointed CJA counsel for defendant (CJA Appointment [5]), on August 13, 2008, Michael Friedman, Esq. entered an appearance as retained counsel.  (Notice of Appearance [25].)  Following some period of negotiation, the parties notified the District Court that the defendant had agreed to plead guilty, and that they had negotiated a plea agreement; thus, the District Court set this matter for a change of plea hearing to be held on March 12, 2009.  (Notice [39].)  At that hearing, the defendant–assisted by counsel and a translator–entered a guilty plea to Count One of the Indictment, which the District Court accepted.  (Minute Sheet [40].)  Although it is unnecessary to summarize the entire proceeding, given claims made by the Movant, the undersigned highlights the following from the transcript of the plea colloquy:

| AUSA Alley: | Mr. Martinez, I am showing you your–page 10 of your plea agreement; is that your signature? |
|---|---|
| Defendant: | Yes. |
| AUSA Alley: | You have had a chance to go over the entire guilty plea and plea agreement with your lawyer? |
| Defendant: | Yes. |

---

in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (Indictment [8].)

3

AO 72A
(Rev.8/8
2)

AUSA Alley:          You understand everything contained in the plea agreement?

Defendant:          Yes.

(Tr. [57] 2.)

In the colloquy, the District Court also explained to Mr. Martinez-Guzman the rights he was giving up by pleading guilty, and he replied that he understood. (Tr. [57] 5-6.) Movant further stated that he understood that his maximum term of imprisonment was life, and that there was a mandatory minimum term of imprisonment of ten years. (Id. at 6-7.) Movant also understood that the Government had recommended that the drug amount was less than 1.5 kilograms, but that it reserved the right to modify its recommendation, and the District Court was not bound by the Government's recommendations. (Id. at 8-10.) Movant also stated that he understood and agreed to the appeal waiver. (Id. at 10.) The District Court asked Movant whether there was any other agreement or promise about the sentence he might receive, which had induced or caused him to plead guilty, and Movant answered, "No." (Id. at 11.)

The aforementioned plea colloquy tracked the "Guilty Plea and Plea Agreement" (hereafter "Agreement") [40-1], which Movant and his attorney had

4

signed.  In that Agreement, Movant acknowledged that he understood (1) he was subject to a maximum life term of imprisonment; (2) he was subject to a mandatory minimum term of imprisonment of ten years; (3) the District Court could impose that maximum term and no one could predict his exact sentence; (4) the probation office and the District Court could still consider the conduct underlying dismissed counts in determining relevant conduct and a reasonable sentence; and (5) in regard to Sentencing Guidelines recommendations, the Government would recommend that Movant's criminal activity involved less than 1.5 kilograms of methamphetamine.  (Id. at 3-5.)  The Agreement states as follows in regard to the Government's right to make and modify recommendations regarding application of the Sentencing Guidelines:

> Except as expressly stated elsewhere in this Plea Agreement, the Government also reserves the right to make recommendations regarding application of the Sentencing Guidelines.

### Right to Modify Recommendations

> With regard to the Government's recommendation as to any specific application of the Sentencing Guidelines . . . , [Movant] understands and agrees that, should the Government obtain or receive additional evidence concerning the facts underlying any such recommendation, the Government will bring that evidence to the attention of the Court and the Probation Office.  In addition, if the additional evidence is sufficient to support a finding of a different

5

application of the Guidelines, the Government will not be bound to make the recommendation set forth elsewhere in this Plea Agreement, and the failure to do so will not constitute a violation of this Plea Agreement.

(Id. at 6-7.)

Movant also "voluntarily and expressly waive[d] the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding . . . on any ground, except . . . an upward departure or a variance from the otherwise applicable sentencing guideline range." (Agreement at 8.)  Movant certified that he had read the Agreement and had carefully reviewed every part of it with Mr. Friedman, and that he voluntarily agreed to the terms and conditions of the Agreement, including the appeal waiver. (Id. at 11.)

At the sentencing hearing held on July 16, 2009, the Government agreed to abide by the recommendations of the Agreement, rather than exercise its right to modify those recommendations in light of the Presentence Investigation Report ("PSR").[3]  (Sentencing Tr. [60] 2-3.)  In exchange, counsel for defendant agreed

---

[3] The PSR was admitted as Government Exhibit 2 during the evidentiary hearing.  It recommends an offense level of 37 with a custody guideline range of 210-262 months.

AO 72A
(Rev.8/8
2)

to withdraw his objections to the PSR and recommend a sentence at the high end of the guidelines, or 168 months.  (Id. at 4-5.)  The District Court accepted the parties' recommendations and sentenced Mr. Martinez-Guzman to 168 months in the custody of the Bureau of Prisons, followed by five years of supervised release. (See Sentencing Tr. 8; J. and Commitment [47].)

## II.   **THE EVIDENTIARY HEARING**

Movant testified that he signed the Agreement because his attorney told him the sentence would be ten years, and that had he known the sentence would be fourteen years, he would not have paid the attorney and would not have signed the Agreement.  (Evid. Hr'g Tr. [59] 9, 11.)  Movant further testified that his sentence was inconsistent with his understanding, based on counsel's advice, of the enhancements to be applied.  (Id. at 10.)[4]  When asked by the Court about the truth

---

[4] For example, Mr. Martinez-Guzman testified as follows:

> I asked my attorney . . . how much time would I end up actually serving, and he told me, well, you've already been in for two years, and you do 85 percent, so that ends up being about 8 and a half years, you take off two years of that, and then they give you 12 months for doing a drug program, so it would be less.  But if they leave me with those points [because of the weapons], then I can't do that, I can't get that.

(Evid. Hr'g Tr. 10.)  Mr. Martinez-Guzman further acknowledged that his attorney

of the assertion in his petition that the two pages of the Agreement with his signature were the only two pages he was shown, Movant responded that he could not recall, and reiterated that he signed the Agreement based on his attorney's representation that the sentence would be ten years.  (Id. at 11.)

Upon examination by the Government, Mr. Martinez-Guzman acknowledged that he was informed at the plea hearing that his charge carried a mandatory minimum term of ten years and that he understood that the Court could not go below ten years.  (Evid. Hr'g Tr. 16-17.)  Movant further agreed that the Court's statements regarding the minimum and maximum terms of imprisonment were consistent with the Agreement, that the Court informed him that it could take into consideration the conduct underlying the dismissed weapons charge, and that the Court informed him that it was not bound by the Government's recommendations and would make its own decision regarding the sentence.  (Id. at 17-18.)  Movant conceded that he knowingly gave up certain appeal rights, including the right to bring a collateral attack on his conviction.  (Id. at 19-20.)

---

informed him that the Government wanted him to plead guilty to both counts in the indictment, but questioned why he was not permitted to choose which count would be dismissed.  (Id. at 13-14; see also id. at 16 ("Why didn't they leave the weapon [Count Two] and take off the drugs [Count One], that's what I'm asking.").)

Movant testified that he met with his lawyer before the sentencing and understood that his sentencing guideline was 210 to 262 months, which is greater than the 168-month sentence that he actually received. (Id. at 22.)

Although he acknowledged testifying at the plea hearing that he had a chance to go over the entire Agreement with his attorney and that he understood everything in the Agreement, Mr. Martinez-Guzman testified that his attorney "did not read anything to me," and that his lawyer "told me to sign, that it was 10 years that I was signing for." (Evid. Hr'g Tr. 25.) Movant further stated, when asked whether he was lying during his previous statements to the Court at the plea hearing, "Well, maybe I was or maybe I wasn't. I was tired. I was tired and I signed and I couldn't – I couldn't anymore." (Id. at 26.) However, Movant reiterated that he never reviewed with his attorney and understood the full Agreement. (Id. at 27.)

Lastly, Movant testified that after the sentencing hearing but while he was still in the courthouse, he asked his attorney to appeal his sentence. (Evid. Hr'g Tr. 29-30.)

Movant's attorney during the criminal matter, Mr. Friedman, testified that the two of them met four times to review the evidence and to discuss Movant's

9

potential cooperation with the Government. (Evid. Hr'g Tr. 32-33.) Mr. Friedman testified that he explained to Movant that the Government's case against him "was potent; we could not win at trial." (Id. at 33.) Accordingly, Mr. Friedman approached the Government via DEA Agent Terry Beard and Assistant U.S. Attorney Paul Jones. (Id. at 34.)[5]

Following preliminary discussions between Mr. Friedman and Agent Beard, the Government met twice with Mr. Martinez-Guzman. (Evid. Hr'g Tr. 34-35.) Mr. Friedman described the meetings as "horrible" because Movant "lied constantly, extensively, and to a point where Agent Beard was insulted." (Id. at 35.) Agent Beard refused a third meeting after the second meeting did not go any better than the first. (Id. at 37-38.) At that point, Mr. Martinez-Guzman authorized Mr. Friedman to negotiate a plea agreement with the Government. (Id. at 38.) Mr. Friedman testified that "[w]e were extremely fortunate and very grateful that the Government dismissed" Count Two. (Id.)

---

[5] Although collateral to the Plea Agreement itself, the Court permitted counsel to question Mr. Friedman regarding his negotiations with the Government based on counsel's representation that such testimony would aid the Court in making credibility determinations. (See Evid. Hr'g Tr. 31.) Movant did not object.

AO 72A
(Rev.8/8
2)

Mr. Friedman testified that he reviewed the Agreement with his client at a jail facility in Centre, Alabama prior to the plea hearing by reading it aloud to him in Spanish, spending approximately fifteen to twenty minutes to do so.  (Evid. Hr'g Tr. 40-41, 58.)[6]  In reviewing the Agreement with his client, Mr. Friedman translated some paragraphs word-for-word and summarized the salient points of other paragraphs.  (Id. at 41-42.)  Mr. Friedman testified that he translated word-for-word the acknowledgment of waiver of rights, the sentencing guideline recommendation, and the limited waiver of appeal.  (Id.)  Mr. Friedman further testified that Movant asked appropriate questions about the Agreement and appeared to understand what was going on.  (Id. at 43-44.)[7]  Before the plea hearing began, Mr. Friedman again reviewed the Agreement with Movant in the courthouse's holding cell.  (Id. at 46.)

Mr. Friedman testified further as follows:

_____

[6] Mr. Friedman has appeared numerous times before the undersigned.  On many of those occasions, Mr. Friedman represented Hispanic clients and conversed with them in Spanish in open Court.  Thus, the Court is satisfied that Mr. Friedman is fluent in Spanish.

[7] Mr. Friedman elaborated, testifying that based on his experience in thirteen years of practice, he "saw no issues with [Movant's] understanding, no issues with his understanding of my Spanish, his comprehension, mental capabilities, mental capacities."  (Evid. Hr'g Tr. 45.)

> Q.     Did you tell him he would definitely get a certain sentence?
>
> A.     What I told him was not only could I not tell him what his sentence would be, we required what's called a PSR or a presentence report.  That his mandatory minimum was 10, his maximum was life, his sentence was going to fall somewhere in there, and I could not calculate that, and ultimately a judge would decide the sentence, I could not guarantee a sentence for him.   His mandatory minimum was 10.
>
> Q.     Now, when he – at the time of entering his guilty plea did he indicate to you that he would want to have his sentence appealed.
>
> A.     No.

(Evid. Hr'g Tr. 46-47; <u>see also</u> <u>id.</u> at 49 (testifying that Movant understood that judge would consider sentence range of 210 to 262 months).)

After the sentencing hearing, Mr. Friedman informed Mr. Martinez-Guzman that the sentence was "a very, very fair shake from the Government."  (Evid. Hr'g Tr. 50.)  In addition, Mr. Friedman testified that he informed Movant that, because the sentence was lower than the applicable guideline range, there was no right to appeal.  (<u>Id.</u>)   However, Mr. Friedman testified that Movant "was angry at everybody."  (<u>Id.</u> at 51.)

12

AO 72A
(Rev.8/8
2)

Mr. Friedman testified that it is his standard practice to discuss appealing a case with defendants after sentencing, that he did so in this case, and that Movant did not request Mr. Friedman to do anything. (Evid. Hr'g Tr. 50-51.) Specifically, Mr. Friedman testified that Mr. Martinez-Guzman did not direct him to file an appeal. (Id. at 52.) Mr. Friedman further testified that he met with Movant's family on one occasion, but that they did not request an appeal, and that his first indication that Movant wanted him to file an appeal was when he received notice of the instant petition. (Id.) Mr. Friedman testified that he would have filed an appeal had Mr. Martinez-Guzman instructed him to do so. (Id. at 53; see also Sentencing Tr. 10 (Mr. Friedman informing Court that he would continue representing Mr. Martinez-Guzman through the appeal period time).)

## III.   DISCUSSION

### A.   Governing Standard

A district court is authorized by 28 U.S.C. § 2255 to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. Section 2255 is reserved for claims that allege "a lack of

13

AO 72A
(Rev.8/8
2)

jurisdiction or constitutional error" or allege other "error of law" that constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). A constitutional claim of ineffective assistance of counsel is properly raised on collateral review. Massaro v. United States, 538 U.S. 500, 505-09 (2003).

**B.**    **Movant's Contentions**

Movant did not appeal, but filed this § 2255 motion raising the following grounds for relief. Movant argues that his entry into the guilty plea was involuntary and unknowing because Mr. Friedman inadequately assisted him in making an informed and intelligent decision in the following ways:

a.    Movant relied on Mr. Friedman's promise that he would receive no more than a ten-year sentence and, but for that promise, would not have pleaded guilty. (Pet'r's Mem. Supp. [48-1] at 5-6.) Movant states that he "entered the plea agreement and remained silent as to any promises having been made to him, since he believed [c]ounsel spoke truthfully." (Id. at 5.)

b.    Movant did not understand the Agreement or its consequences (and/or the Government breached the plea agreement). Movant

AO 72A
(Rev.8/8
2)

understood the Agreement (1) to limit the Government to recommending that he be responsible for no more than 1.5 kilograms of methamphetamine and (2) to foreclose the Government from arguing for a two-level role enhancement based on relevant conduct. (Id. at 7-10.)

c.   Movant was allowed to review only the two pages of the Agreement that he signed. (Pet'r's Traverse at 1.)[8]

Movant also contends that Mr. Friedman provided ineffective assistance because Movant asked him to file an appeal and he never did. (Pet'r's Mem. Supp. at 2.) The Court considers these claims separately below.

**C.   Analysis of Movant's Contentions**

**1.   Entry into the Guilty Plea**

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient

---

[8] Movant refers to pages 10 and 12 as the two pages he was shown, but he signed pages 10 and 11.

15

representation prejudiced him.   Id. at 690-92.   The Court may resolve an ineffective-assistance-of-counsel claim based on either of the above prongs. Atkins v. Singletary, 965 F.2d 952, 958-59 (11th Cir. 1992).

Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice.  Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000).

The Supreme Court has stated that:

[The] representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

16

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a petitioner must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for unprofessional counsel's errors," "he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985). A petitioner's bare allegation that he or she would not have pleaded guilty is insufficient to establish prejudice. United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985) (rejecting as insufficient to show prejudice defendant's allegation "she would not have pleaded guilty if her trial counsel had advised her of the deportation consequences").

Here, Movant has failed to show that Mr. Friedman's representation fell outside the wide range of professionally competent assistance. To the contrary, not only did Mr. Friedman obtain significant concessions from the Government in the Plea Agreement, but he was also able to hold the Government to those concessions despite the enhancements recommended by the PSR. Further, although Movant now claims that counsel promised him a ten-year sentence and that he did not fully review and understand the Plea Agreement, Mr. Martinez-Guzman testified

17

otherwise in the plea hearing and made no objection at the sentencing hearing.  The

Court finds credible Mr. Friedman's testimony regarding his complete review of

the plea agreement and possible sentence with Mr. Martinez-Guzman and finds

Mr. Martinez-Guzman's current contentions non-credible.  In sum, a review of the

record, including the testimony at the plea hearing and the evidentiary hearing,

compels a finding that Movant's conclusory and unsupported allegations are

wholly incredible.  Blackledge, 431 U.S. at 74.  Accordingly, the undersigned

**RECOMMENDS** that the Motion to Vacate, Set Aside, or Correct Sentence filed

under 28 U.S.C. § 2255 be **DENIED** as to Movant's claim that ineffective

assistance of counsel rendered his guilty plea was involuntary and unknowing.

## 2.   **Failure to File an Appeal**

To show that counsel was ineffective for failing to file a notice of appeal, the

defendant must demonstrate that counsel's failure was objectively unreasonable

and prejudiced the defendant.  Roe v. Flores-Ortega, 528 U.S. 470, 476 (2000).

"[A] lawyer who disregards specific instructions from the defendant to file a notice

of appeal acts in a manner that is professionally unreasonable."  Id. at 477.  When

the defendant has neither asked counsel to file an appeal or refrain from filing an

appeal, the issue becomes whether counsel "consulted with the defendant about an

18

appeal." Id. at 478. "If counsel has consulted with the defendant, . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. "If counsel has not consulted with the defendant," the issue becomes "whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. at 479-80. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id.

Additionally, upon showing that counsel's performance was deficient, the defendant also must show prejudice, i.e., that but for counsel's deficient performance, he would have appealed. Id. at 484. Such prejudice may be presumed if the defendant shows that counsel failed to follow specific instructions to file an appeal. Gomez-Diaz v. United States, 433 F.3d 788, 790 (11th Cir. 2005). Absent presumed prejudice, whether the defendant would have appealed but for counsel's deficient consultation "will turn on the facts of [the] particular case." Flores-Ortega, 528 U.S. at 485; see also Otero v. United States, 499 F.3d

AO 72A
(Rev.8/8
2)

1267, 1271 (11th Cir. 2007) (holding that counsel's failure to file an appeal or consult with the defendant regarding his appeal rights was constitutionally adequate when the defendant had pleaded guilty, signed an appeal waiver, and demonstrated no interest in filing an appeal).

Here, presented with conflicting testimony regarding whether Movant requested Mr. Friedman to file an appeal, the Court must make a credibility determination. In light of the overall record, including evidence of Movant's dishonesty during negotiations with the Government and Movant's testimony to this Court that "maybe" he was lying to the Court during the plea hearing, the undersigned credits Mr. Friedman's testimony that he discussed an appeal with Movant, but Movant did not ask him to file an appeal. The Court further observes that Mr. Martinez-Guzman proffered few specific facts and no additional evidence (such as, for example, testimony of family members or other witnesses) supporting his purported request that Mr. Friedman file an appeal. Moreover, had Movant asked Mr. Friedman to appeal, the only reasonable response from Mr. Friedman would have been to explain the futility of filing an appeal, given the waiver contained in the Plea Agreement. Accordingly, the undersigned **RECOMMENDS** that the Motion to Vacate, Set Aside, or Correct Sentence filed under 28 U.S.C. §

20

2255 be **DENIED** as to Movant's claims of ineffective assistance of counsel for failing to file a notice of appeal.

**IV.**   **CONCLUSION**

**IT IS HEREBY RECOMMENDED** that the Motion to Vacate, Set Aside, or Correct Sentence (Civil Docket [1]; Criminal Docket [48]) be **DENIED**.

The Clerk is **DIRECTED** to terminate the reference to the magistrate judge.

**SO RECOMMENDED**, this 6th day of October, 2010.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JULIO MARTINEZ-GUZMAN, | : | MOTION TO VACATE |
| | : | 28 U.S.C. § 2255 |
| Petitioner, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 4:10-CV-059-RLV-WEJ |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | CRIMINAL ACTION NO. |
| | : | 4:08-CR-03-RLV-WEJ |

**ORDER FOR SERVICE OF
<u>FINAL REPORT AND RECOMMENDATION</u>**

Let this Final Report and Recommendation of the United States Magistrate

Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil

Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together

with a copy of this Order, be served upon each party or his/its counsel.  Pursuant

to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Final

Report and Recommendation within fourteen days of the receipt of this Order.

Should objections be filed, they shall specify with particularity the alleged error(s)

made (including reference by page number to any transcripts if applicable) and

shall be served upon the opposing party.  The party filing objections will be

responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Final Report and Recommendation may be adopted as the opinion and order of the District Court, and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 6th day of October, 2010.


WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

2

AO 72A
(Rev.8/8
2)